UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
OCT 07 2005
AT PIKEVILLE
LESLIE G. WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-367-GWU

BOBBI SALYER, PLAINTIFF,

VS.                    MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Salyer

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Salyer

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Salyer

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bobbi Salyer, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic low back pain and a history of an excision of a soft tissue mass on the right foot. (Tr. 355). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 357-60). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 37 years, 11th grade education, and no more than semi-skilled work experience could perform any jobs if she were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 404). She: (1) could occasionally crawl and work with her left upper extremity; (2) should perform no repetitive and/or frequent bending, twisting, or turning; and (3) needed to avoid even

7

Salyer

moderate exposure to vibration. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 405).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. The plaintiff had filed a previous application for DIB in December, 2000, which was denied in a decision by an ALJ dated June 11, 2002. (Tr. 11-19). The administrative decision was later affirmed on appeal to the United States District Court in a decision by Judge Karen K. Caldwell. Salyer v. Social Security Administration, Pikeville Civil Action No. 02-347 (E.D. Ky. September 3, 2003). The ALJ in the present case considered the period prior to June 11, 2002 to have been previously adjudicated, and did not reopen the prior, final decision. (Tr. 354). When a prior decision has not been reopened, this Court has no jurisdiction to review it in the absence of a colorable constitutional claim. Califano v. Sanders, 430 U.S. 99 (1977).

The ALJ noted that there was relatively little additional evidence submitted subsequent to June 11, 2002.

Although the plaintiff complained of anxiety and depression, she was briefly treated at a Comprehensive Care Center late in 2001, and given a diagnosis of depressive disorder with a current Global Assessment of Functioning (GAF) score

8

Salyer

of 70. (Tr. 587). A GAF score in this range reflects only mild symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. She discontinued treatment as of January 21, 2002. The only evidence from the relevant period was a consultative psychological evaluation by Dr. William Rigby on December 16, 2002, which resulted in a diagnosis of dysthymia and a GAF score of 66. (Tr. 625). A GAF score in this range also reflects mild symptoms. Dr. Rigby felt that the plaintiff would have a "good" ability to understand and follow simple instructions, sustain attention with repetitive tasks, and relate to others such as fellow workers and supervisors, and would have a "fair" ability to respond to the stress and pressures of a day-to-day work setting. (Tr. 625). State agency psychologists who reviewed the record concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 626,664). Therefore, this portion of the ALJ's decision is clearly supported by substantial evidence.

As far as the physical status was concerned, the plaintiff was evaluated for her complaints of headaches by neurologist, Dr. Naveed Ahmed, on August 27, 2002. Dr. Ahmed's examination was largely unremarkable, with no neurological deficits, and he obtained a CT scan of the head, which was reported as negative. (Tr. 614-19). On a follow-up evaluation on October 23, 2002, the plaintiff reported that the severity and frequency of her headaches had improved, and Dr. Ahmed's examination was still unremarkable except for tenderness in the right occipital nerve

9

Salyer

group area. (Tr. 614). Dr. Ahmed listed his "impression" as chronic recurrent migraines, and advised the plaintiff to adjust the medications that he previously prescribed. (Tr. 615). No functional restrictions are suggested. The plaintiff made an emergency room visit with a complaint of migraine in June, 2003, but no diagnosis was made apart from headache, and no functional restrictions are suggested. (Tr. 684).

The plaintiff had been treated by Dr. Anbu Nadar for complaints of lower back pain since 1997 (e.g., Tr. 660) and, in the previous application, the ALJ had considered office notes from this source through December 21, 2000 (Tr. 218-28). In connection with the present application, additional notes were submitted, reflecting no office visits in 2001, two office visits in 2002, and two office visits in 2003. (Tr. 643-5). Dr. Nadar's most recent examination showed tenderness in the lumbosacral and sacroiliac area, with a limited range of motion secondary to pain, but reflexes were intact and the patient was able to ambulate independently. (Tr. 643). Dr. Nadar prescribed Ultram and recommended "range of motion exercises" and, in view of the plaintiff's persistent radicular symptoms, referred her for an MRI of the lumbar spine. (Tr. 643). The MRI was performed on March 7, 2003, and was read as showing only mildly bulging annuli of the three lowest lumbar discs, with no focal herniation or impingement on neural structures. (Tr. 642). Dr. Nadar apparently then referred the plaintiff to Dr. J. Annabathula to obtain a bone scan "to

10

Salyer

rule out any further problems." (Tr. 696). Although the physicians noted severe tenderness on internal rotation of the left hip joint (Tr. 696), the bone scan was normal (Tr. 695) . Once again, no functional restrictions are suggested.

Otherwise, the plaintiff's treatment was for transient conditions, such as an enlarged right cervical lymph node which apparently resolved with the use of antibiotics. (Tr. 601-2, 699).

A state agency reviewing physician, Dr. H. T. Anzures, opined in January 2003 that the plaintiff did not have a "severe" physical impairment, based on her normal neurology examination in August, 2002 and her statement that her headaches had improved as of October, 2002. (Tr. 641). Another reviewer, Dr. John Rawlings, affirmed the previous decision without comment on April 3, 2003. (Tr. 662).

The plaintiff's only argument on appeal is that the MRI of the lumbosacral spine showing bulging disks had been obtained prior to Dr. Anzures' opinion, and that in view of Dr. Rawlings' failure to make any specific comment about the MRI, the ALJ should have explained the weight that he was giving to these sources. 20 C.F.R. Section 404.1527(d)(3). However, as the plaintiff admits, it is apparent that the ALJ adopted the limitations found in the prior decision, and that, implicitly, there was no worsening of her condition shown in the interim. As stated in the Applicable Law section of this opinion, it is the plaintiff's burden to prove his own case, and there is

11

Salyer

a total lack of evidence of specific restrictions from any examining, treating, or non-examining source. Therefore, even if the ALJ committed error in failing to discuss the state agency reviewers, it was harmless to the plaintiff, who simply failed to carry her burden of proof.

The decision will be affirmed.

This the ___5___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE